UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONNY SUGGS,

    Plaintiff,

v.                                                                 Case No. 2:11-cv-175
                                                 HON. ROBERT HOLMES BELL
KATHLEEN NELSON, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

        Plaintiff Ronny Suggs, an inmate currently confined at the Chippewa Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Newberry Correctional Facility (NCF) Resident Unit Manager Kathleen Nelson and NCF Assistant Resident Unit Manager T. Parling.  Plaintiff's complaint alleges that defendants violated his rights by failing to provide procedural due process when taking his Nike tennis shoes and during the "sham" hearing process.  Plaintiff asserts that defendants took retaliatory action against him after he complained to defendant Nelson's supervisor.

        While housed at the Michigan Reformatory, plaintiff was allowed to purchase and possess a pair of tennis shoes.  Plaintiff alleges that in 2009, after a long drawn out process of initial refusals by prison staff, he was able to purchase a tennis shoe that fit his feet, a size 9½ 4E.  Plaintiff asserts that the MDOC has a long history of allowing prisoners to purchase non-standard shoe sizes.  Plaintiff was able to purchase the shoes and the money was taken from his prison account.  The shoes were approved by the Prison Inspector as the Correctional Facilities Administration (CFA) agent and other prison staff.  Four months later plaintiff was transferred to NCF.  Plaintiff received

a notice of intent (NOI) to conduct an administrative hearing regarding some of his property. The NOI was written by Corrections Officer Salter. The NOI listed as the reason for the hearing:

>   1- Watchband - No watch
>   1- Sweatshirt - No number
>   1- Amplifier - No instrument/ must be approved by Rec.
>   1- Bag popsicle sticks - Hobbycraft
>   1 - Book - Wrong name
>   1 - Winter coat - No number/ No hoods allowed per PD 04.07.112
>   2 - Pair of broken glasses

Plaintiff wrote defendant Nelson on February 1, 2010, inquiring about the delay in conducting the hearing and asking who would conduct the hearing. Plaintiff was informed three days later that he needed to report to defendant Nelson's office. Plaintiff alleges that defendant Nelson apologized for not holding the hearing, informed plaintiff that she would hold a hearing before the end of the week, and told plaintiff to bring proof of ownership of the property. Three weeks later, on March 1, 2010, plaintiff saw prison Inspector Schultz and explained his efforts to get a hearing. Inspector Schultz told plaintiff to send a kite and that he would look into the issue. Plaintiff typed a letter to Inspector Schultz that day. Plaintiff alleges that on March 4, 2010, he spoke with defendant Nelson, who expressed her displeasure in plaintiff for sending the letter to her superior. Defendant Nelson told plaintiff that she had intended to work with plaintiff on the property items, but now she had no intention of assisting plaintiff in obtaining his personal property. She directed plaintiff to leave her office. Plaintiff asserts that after this conversation, he feared complaining to any other prison official about his property.

Plaintiff was told to report to defendant Nelson's office on March 25, 2010. When he arrived at her office, defendant Parling was also present. Defendant Parling asked plaintiff if he wanted to have the hearing on the property. Plaintiff replied that he did. At that time, defendant Parling placed a document in front of plaintiff that plaintiff maintains was altered. The document

was supposed to be a copy of the NOI that plaintiff had received. However, the document had two check marks on it. Under proposed disposition, the box for "destroy" had been checked and the box for waiving the 24-hour notification of hearing had been checked. Plaintiff asserts that the check marks were made by defendants with the intent to deny plaintiff his personal property and to deny plaintiff his due process rights.

Plaintiff asserts that he submitted a number of documents to defendant Nelson during the hearing to show his ownership of the property. Plaintiff asserts that defendant Nelson refused to acknowledge his documents, because she intended to deny plaintiff his personal property. Plaintiff claims that defendant Nelson acted in retaliation. The hearing report also noted that one pair of green gloves with another prisoner's number was also found, but not listed on the NOI. The finding stated:

> Prisoner has no proof of ownership of the following items which will be destroyed: 1 Watchband - no watch/proof of ownership, 1 Bag of Popsicle Sticks - no hobbycraft card/proof of ownership, 1 Pr Black Tennis Shoes - no number/proof of ownership, 1 Jacket w/hood - no number/ no proof of ownership, and jackets w/hoods were not allowed to be ordered after 1-12-1998. 1 Book - wrong name/ripped with cover pulled away from binding, 1 pr gloves not listed on contraband removal slip with the #318502 which is not the prisoner's number and is therefore not allowed. Two Pr Glasses - lens out of one of the pairs, and both have side pieces broken off the frames which makes them both contraband the prisoner may not possess. (Note: Prisoner was wearing a useable pair).
>
> Prisoner was able to provide proof of purchase for the following: 1 Amp which had two plugs in it but he does not possess a musical instrument and it is therefore not allowed and will not be stored. 1 Pr Nike Air Tennis Shoes - not numbered/sole removable, and prisoner does not possess a special detail to have these shoes which are . . . not an approved athletic shoe. Prisoner was able to provide proof of ownership of the green sweatshirt.

Plaintiff alleges that after the hearing, he was placed in segregation and then transferred to Chippewa Correctional Facility. Plaintiff alleges that he appealed the NOI hearing results through the grievance process. Plaintiff's appeal was denied at Step I. At Step II, it was determined that plaintiff's amplifier would be sent to plaintiff's current facility to determine whether plaintiff could possess it. The Step III decision upheld the decision at Step II. Plaintiff asserted that, as of the date of his complaint, the amplifier was never forwarded to his facility and no determination was made regarding whether he could keep the amplifier.[1]

Plaintiff asserts that he needs extra-wide shoes and that it is common for prison officials to make exceptions to the Policy Directives and allow prisoners to order shoes that are not approved by policy. Plaintiff asserts that he followed the approval process while seeking to get wider shoes. Plaintiff's request was approved by CFA. According to plaintiff, defendant Nelson was aware of this procedure and was informed by prison officials where plaintiff's shoe order was placed and approved.

Defendants have filed motions for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but

---

[1] The record is silent as to whether this issue is now resolved.

must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

   Plaintiff claims that defendants deprived him of his property, thereby violating his Fourteenth Amendment due process rights.  The Due Process Clause does not prohibit deprivation of property by the state; instead it prohibits such deprivations without *due process of law*.  *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), overruled in part on other grounds *Daniels v. Williams*, 474 U.S. 327 (1986).

   A plaintiff alleging infringement of property rights must show that the deprivation was caused by action taken pursuant to established state procedures.  *Hudson v. Palmer*, 468 U.S. 517, 532 (1984); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-436 (1982).  Plaintiff herein fails to make the required distinction between challenging the "established state procedure" itself and the failure of the state employee to follow that procedure.  *Id.*  If the official performing the state procedure fails to follow the state procedure or conform his conduct to state law, the plaintiff's injury

is the result of a "random and unauthorized act" which the state was unable to foresee and thus prevent. In *Parratt*, the Supreme Court held that no procedural due process violation occurs when the deprivation is the result of a "random and unauthorized act," unless the state failed to provide the plaintiff with an "adequate post-deprivation remedy."

> Application of the principles recited above to this case leads us to conclude the respondent has not alleged a violation of the Due Process Clause of the Fourteenth Amendment. Although he has been deprived of property under color of state law, the deprivation did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the state to follow established state procedure. There is no contention that the procedures themselves are inadequate nor is there any contention that it was practicable for the State to provide a predeprivation hearing. Moreover, the State of Nebraska has provided respondent with the means by which he can receive redress for the deprivation.

*Parratt*, 451 U.S. at 543.

The Sixth Circuit has held that in procedural due process claims brought pursuant to 42 U.S.C. § 1983, the "Parratt doctrine" allows dismissal where the state provides an adequate postdeprivation remedy if:

> 1) the deprivation was unpredictable or "random"; 2) predeprivation process was impossible or impracticable; and 3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty.

*Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416-417 (6th Cir. 1996). In cases where these conditions are present, "a procedural due process claim will not be stated unless the plaintiff pleads and proves that his available state remedies are inadequate to redress the wrong." *Copeland*, 57 F.3d at 479; *Pilgrim*, 92 F.3d at 417.

Plaintiff in this case has not demonstrated the absence of adequate state remedies for defendants' alleged misconduct. Plaintiff filed a grievances appealing the hearing results through

Step III.  See MDOC PD 03.02.130(A)-(LL).  In addition, plaintiff had a right to pursue a claim through the Prisoner Benefit Fund per Policy Directive 04.02.110 for reimbursement of his lost property.  Prisoners may also pursue claims of up to $1,000 through the State Administrative Board, or through the courts if over $1,000.  See Policy Directive 04.07.112.  The fact that the remedies provided by the state do not provide all the relief which may be available under 42 U.S.C. § 1983 does not mean that the state remedies are ineffective.  *Parratt*, 544 U.S. at 544.  Therefore, pursuant to *Parratt*, plaintiff's due process claims should be dismissed.

Plaintiff argues that defendant Nelson retaliated against him after the NOI was issued through her involvement in depriving plaintiff of his Nike tennis shoes after the hearing and by failing to properly provide plaintiff with procedural due process protections.  Plaintiff argues that he complained to defendant Nelson's supervisor that he was not getting a timely hearing on the NOI.  Plaintiff asserts as a result of his complaint, the hearing was a sham and he lost property that was clearly proven as his own.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendant Nelson argues that there is no evidence that she took any action for the purpose of retaliating against plaintiff. Apparently, defendant Nelson has conceded, at least for purposes of this motion, that plaintiff engaged in protected conduct and that adverse action was taken by her against him.[2] In the opinion of the undersigned, whether defendant Nelson retaliated against plaintiff is necessarily a question of fact on this record.

Alternatively, defendants move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly

---

[2]It seems that there is at least an argument that there was no adverse conduct, because plaintiff complained about not receiving a timely hearing to defendant Nelson's supervisor. Plaintiff then received a hearing. The hearing was necessary to determine whether plaintiff's property would be returned, sent out of the facility or destroyed.

established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. In the opinion of the undersigned, as previously discussed, because plaintiff cannot establish that his due process rights were violated, defendants are entitled to qualified immunity on that issue. However, because a question of fact remains on the retaliation issue against defendant Nelson, defendant Nelson should not be afforded qualified immunity on that issue.

Accordingly, it is recommended that Defendant Parling's Motion for Summary Judgment (Docket #19) be granted and that Defendant Nelson's Motion for Summary Judgment (Docket #10) be granted in part, dismissing the due process claim, but denied on the retaliation claim.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated: August 15, 2012